## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District  Puerto Rico | |
|---|---|---|
| Name (under which you were convicted):<br>Luis Melendez-Pimentel | | Docket or Case No.:<br>05-232 |
| Place of Confinement:<br>FCI Fort Dix | | Prisoner No.:<br>24477-069 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) | |
| v. | Luis Melendez-Pimentel | |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   USDC Puerto Rico

   (b) Criminal docket or case number (if you know):  05-232

2. (a) Date of the judgment of conviction (if you know):  8/29/2006

   (b) Date of sentencing:  8/29/2006

3. Length of sentence:  120 Months

4. Nature of crime (all counts):

   21 USC 846, Conspiracy Distribute Cocaine; 18 USC 924(c), Possession F/A drug trafficking crime.

5. (a) What was your plea? (Check one)

   (1)   Not guilty ❏          (2)   Guilty ☑          (3)   Nolo contendere (no contest) ❏

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)          Jury ❏          Judge only ❏

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8. Did you appeal from the judgment of conviction?    Yes ☐    No ☑

9. If you did appeal, answer the following:

   (a) Name of court:   USCA First Circuit

   (b) Docket or case number (if you know):   06-2416

   (c) Result:   Affirmed

   (d) Date of result (if you know):   9/2/2008

   (e) Citation to the case (if you know):

   (f) Grounds raised:

  Anders Brief

   (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☑

     If "Yes," answer the following:

     (1) Docket or case number (if you know):

     (2) Result:

     (3) Date of result (if you know):

     (4) Citation to the case (if you know):

     (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court:

     (2) Docket or case number (if you know):

     (3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑  No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

   (1) Name of court:

   (2) Docket or case number (if you know):

   (3) Date of filing (if you know):

   (4) Nature of the proceeding:

   (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

   (1) First petition:      Yes ❑  No ❑

   (2) Second petition:   Yes ❑  No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

**GROUND ONE:**

Sixth Amendment Violation - Ineffective Assistance Counsel

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Counsel was ineffective when he failed to review the discovery of the case and would have realized that the Government's main informant was arrested and charged with new criminal charges challening his credibility.  Had counsel realized that the government's C/I was arrested and charged with another crime, Petitioner would not have proceeded to pleading guilty and would have pled guilty as the co-defendant's did which were acquited.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Ineffective assistance of counsel claims cannot be raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




**GROUND TWO:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ❏   No ❏

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

    Yes ❏   No ❏

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❏  No ❏

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❏  No ❏

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❏  No ❏

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❏  No ❏

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❏  No ❏

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ❑   No ❑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
(a) At preliminary hearing:
   Luis R. Rivera-Rodriguez, 239 Arterial Hostos, San Juan, PR 00918
(b) At arraignment and plea:
   Luis R. Rivera-Rodriguez, 239 Arterial Hostos, San Juan, PR 00918
(c) At trial:

(d) At sentencing:
   Luis R. Rivera-Rodriguez, 239 Arterial Hostos, San Juan, PR 00918

Page 12

(e) On appeal:

  Luis R. Rivera-Rodriguez, 239 Arterial Hostos, San Juan, PR 00918

(f) In any post-conviction proceeding:


(g) On appeal from any ruling against you in a post-conviction proceeding:


16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ❏ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ❏ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:


(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ❏  No ❏

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This pleading is timely filed.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

  Vacate the conviction in this case.

or any other relief to which movant may be entitled.


_____
Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

   12/1/2009    (month, date, year).


Executed (signed) on _____12/1/2009_____ (date).


_Luis A. Melendez Pimentel_
Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUIS MELENDEZ-PIMENTEL,
    Petitioner,

vs.

                        Docket No.: 05-232

UNITED STATES OF AMERICA
    Respondent.
_____/

## PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

Comes now Luis Melendez-Pimentel with this his Memorandum of Law and Supporting Appendix in support of Motion to Set Aside Conviction pursuant to Title 28 U.S.C. Section 2255 and in support provides as follows:

### SUMMARY OF THE PROCEDURAL HISTORY

Petitioners along with nine co-defendants were subject to a six count indictment returned by the District of Puerto Rico Grand Jury on July 6, 2005. Count III charged petitioner from on or about February 17, 2005 and his co-defendants with aiding and abetting each other, attempting to possess with intent to distribute (5) five kilograms or more of cocaine, and one kilogram or more of heroin in violation of Title 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count V charged that on or about January 21, 2005 in the District of Puerto Rico and within the jurisdiction of the District Court, defendant Padron Valle, a/k/a "Jorgito" and defendant Reyes Velasquez, Ramon Rosario, a/k/a "Bimbi", Jimenez-Hernandez

a/k/a "Seu", Luis Melendez-Pimentel, Cameron Colomba, and Miguel Diaz Martez, with aiding and abetting each other in that they did carry and possess a firearm during and in relation to a drug trafficking crime for which they could be prosecuted in the United States District Court, that is, attempt to possess with intent to distribute cocaine as charged in Count III of the indictment in violation of Title 21 U.S.C. § 841(a)(1), in violation of Title 18 U.S.C. § 924(c)(i), and 2.

Pursuant to a plea agreement according to the provisions of Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, petitioner pled guilty under the understanding that he would be held accountable for at least 500 grams but less than two kilograms of cocaine and at least 100 grams but less than 400 grams of heroin which resulted in a base offense level of 26 pursuant to Guideline § 2D1.1(c)(7).[1]

Since petitioner was a police officer at the time, the Court enhanced his sentence by (2) sentencing levels, which was warranted for his abuse of position of public trust pursuant to the Guideline § 3B1.3.

Since petitioner accepted responsibility for the offense, the base offense level was decreased by three levels pursuant to § 3E1.1(a) and (b) for an adjusted offense level of 25. Petitioner was aware that he was going to be sentenced to at least a 60 month imprisonment term as per statute for violating Title 18 U.S.C. § 924(c)(1). As to Count V, the parties agreed that there was a statutory minimum sentence of 60 months to be served consecutively. The parties recommended a sentence of 120

---

[1] The party's intent was to make petitioner responsible for a base offense level of 26. According to Guideline § 2D1.1, application 10, different types of drugs to be converted to marijuana for guideline calculation purposes. In this case, the government has only considered the base offense level of 26.

months with a criminal history category of one.   The parties further determined that no other adjustments or departures were applicable.

All defendants, except for two, pled guilty and were sentenced to approximately 120 months imprisonment each.   Defendant Lopez Perez and Ramon Nunez Rosario went to trial and were acquitted.   On August 29, 2006, petitioner was sentenced to serve 60 months as to Counts III and V to be served consecutive to each other for a total of 120 months imprisonment. Petitioner proceeded on appeal, and on September 2, 2008, the First Circuit Court of Appeals affirmed Petitioner's sentence and conviction.   A Writ of Certiorari was not sought.[2]

## ALLEGATION OF JURISDICTION

This Court has jurisdiction to entertain, rule on the merits, and grant relief under Title 28 U.S.C. § 2255 and the principles of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).; *United States v. Bruce*, 89 F.3d 886 (D.C. Cir. 1996) and *United States v. Martin*, 965 F.2d 839, 842-43 (10th   Cir. 1992); *United States v. Shorter*, 54 F.3d 1248, 1252-53 (7th   Cir.), *cert. denied*,   116 S.Ct. 250 (1995).

---

[2] A prisoner has one year from "the date on which the judgment of conviction becomes final" to file a Title 28 U.S.C. § 2255. *Id.* 28 U.S.C. § 2255 ¶ 6(1) In *Clay v. United States,* --- U.S. ----, 123 S.Ct. 1072, --- L.Ed.2d ---- (2003), the Supreme Court held that finality occurs when the time to seek certiorari expires (69 days after the mandate, for a litigant who did not seek rehearing or an extension of time).

## STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE

Mr. Melendez-Pimentel did not raise Claim Number One on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal.

"Cause" is therefore established for his failure to raise the claim prior to this motion. *Ciak v. United States*, 59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Mr. Melendez-Pimentel to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Mr. Melendez-Pimentel to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v.*

*Galloway,* 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall,* 17 F.3d 245, 246 [4] (8th Cir. 1994).

Mr. Melendez-Pimentel has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States,* 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Mr. Melendez-Pimentel, within the meaning of *United States v. Frady,* 456 U.S. 152, (1982), as construed in case law such as *United States v. De La Fuente,* 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr. Melendez-Pimentel sentence is in violation of the Constitution and laws of the United States. *Id. See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Melendez-Pimentel of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## <u>JUDGMENT REQUESTED</u>

Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, Mr. Melendez-Pimentel asks this Honorable Court to **ORDER** an evidentiary hearing where he can prove the allegations herein by: (A) his own testimony; (B) the testimony of is trial attorney; (C) additional evidence; and (D) legal argument to be presented at the hearing.

Upon proof of Mr. Melendez-Pimentel's allegations herein, Mr. Melendez-Pimentel asks this Honorable Court 1) **ORDER** that Mr. Melendez-Pimentel's conviction be **VACATED** and that he be allowed to re-submit his plea of guilt in a knowingly and intelligent manner wherein he is appraised of all the required facts necessary for such a plea or; 2) that this Court **GRANT** an evidentiary hearing where the facts may be properly developed on the record.

## MOTION FOR DISCOVERY

Pursuant to Rule 6³ of the Rules Governing Section 2255 Proceedings, Mr. Melendez-Pimentel asks leave of this Court to invoke the processes of discovery. More specifically, he asks this Honorable Court to **ORDER** that trial counsel allow himself to be deposed. The evidence developed through the foregoing depositions will materially support the allegations of Mr. Melendez-Pimentel, as to the "performance" of counsel, detailed and set forth herein.⁴

More specifically, Mr. Melendez-Pimentel requests this Court to allow counsel to question as to the reasons for the failures complained of herein. Additionally, Mr. Melendez-Pimentel proffers to this Honorable Court that the depositions will substantiate the allegations set forth in his § 2255 Petition.

## STATEMENT OF THE FACTS

The investigation of the instant offense was in cooperation between the U.S. Immigration and Customs Enforcement (ICE), the San Juan Seaport Group special agents along with Federal Bureau of Investigation. The agents began investigation

---

³ It should be noted that Rule 6(a) of the Rules Governing Section 2255 Proceedings provides for discovery under either Federal Rules of Civil Procedure 26-37 or under Federal Rule of Criminal Procedure 16. *See* J. Liebman and R. Hertz, Federal Habeas Corpus Practice and Procedure, § 41.6 [2-3] (3 Ed. 1998). In this respect, the Rules Governing Section 2255 Proceedings are distinct from the Rules Governing Section 2254 Proceedings because they allow additional discovery devices. *Id.*

⁴ The Supreme Court's most recent review of "discovery" in habeas corpus proceedings was in *Bracy v. Gramley*, 520 U.S. 899, 117 S. Ct, 1793, 138 L.Ed.2d 97 (1997). In *Bracy v. Gramley*, the Supreme Court vacated a District Court and Court of Appeals denial of discovery in habeas corpus, 28 U.S.C. § 2254. The Supreme Court pointed out that Rule 6 of the Rules Governing 2254 Cases, prescribing discovery procedures in federal habeas corpus cases, is meant to be consistent with *Harris v. Nelson*, 394 U.S. 286, 22 L.Ed.2d 281, 89 S.Ct. 1082 (1969), in which it was stated that where specific allegations before a federal court show reason to believe that a petitioner for federal habeas corpus relief may, if the facts are fully developed, be able to demonstrate entitlement to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry. *Id. Bracy v. Gramley*, 520 U.S. at 909.

regarding several narcotics smuggling organization integrated by the San Juan City Police Officers.

A U.S. Immigration and Customs enforcement confidential witness stated that he met with an individual a/k/a "Jimmy" at a Seven Eleven store located in the urban of San Juan, San Francisco, Rios Piedras, Puerto Rico.  The confidential witness stated that one of his/her employees introduced him/her to a/k/a "Jimmy".

According to the confidential witness, a/k/a "Jimmy's" name is Jaime Lopez Perez.  The confidential witness indicated that Lopez-Perez works as a police officer with the San Juan City Police Department and that he is stationed in the San Juan City Police Department's mobile office unit located in front of Plaza Antonio Barcele, Barrio Abrero, Santurce, Puerto Rico.  According to confidential witness, Lopez Perez leads a group of San Juan City police officers, who are engaged in criminal activities.  The source indicated that Lopez Perez's organization members escorts loads of narcotics at sea as well as land.  Also, this organization has been involved with the distribution of smuggling of narcotics. Lopez Perez told the confidential witness that the business was getting slow and that they were willing to do anything to make some money.

On October 27, 2004 at approximately 12:26 p.m. the ICE confidential witness made a consensual recorded telephone call to San Juan Municipal Police Officer Lopez Perez at a previously provided number.  The confidential witness talked to Lopez Perez about a shoot out incident where Lopez Perez and Jorge Padron Valle a/k/a "Jorgito" were involved.  Lopez Perez was uniformed at the time.

The confidential witness told Lopez Perez that the people involved in the job had to be trusted since that there was a lot of money involved and that he did not want anything bad to happen. Lopez Perez told the confidential witness that he selected the most closest to him.

On October 29, 2004, an undercover meeting was conducted between the confidential witness, Lopez Perez, Padron Valle, and another unidentified San Juan City police officer at the Plaza Antonio location. Perez, Padron Valle and other members of the organization stated that they needed money and that they were willing to do whatever it took to make extra money. They stated that they would provide escort to loads of narcotics in civilian clothes but fully identified. Lopez Perez stated that he had a contact at the Puerto Rico Police Department Joint Forces of Rapid Action (FURA) at the Marine Unit in Arecibo. According to Lopez Perez, his contact at the FURA recorded a load escort at sea.

On November 17, 2004 at approximately 4:15 p.m. the confidential witness contacted Hyman Lopez Perez to inform him that an individual from another Drug Trafficking Organization (DTO) had packed a champagne colored Toyota Corolla at La Puntilla parking lot in Old San Juan with the last three digits of the license plate being 925. The confidential witness told Lopez Perez that on Wednesdays and Thursdays, the individual driving the Corolla usually transports over 50 thousand in cash from the DTO's illegal proceeds. Moreover, that drugs and guns might also be found inside the vehicle. The confidential witness stated that he wanted to get the weapons and the drugs and that they could split the money.

On the same date, at approximately 4:19 p.m. ICE/San Juan Seaport Group along with the Federal Bureau of Investigations San Juan Field Office initiated surveillance at the Old San Juan area.  They located themselves at the Customs and Board of Protection Building in La Puntilla monitoring room to establish a surveillance of a rented Toyota Corolla bearing license plate FRH-925.

The FBI agents placed a black bag containing $12,335.00 inside the vehicle's trunk.  Other agents posted themselves at different locations in Old San Juan.

On the same date, at approximately 5:32 p.m., a black Lincoln LS bearing Puerto Rico license plate EVJ-595 arrived at the La Puntilla parking lot, and parked next to the rented Toyota Corolla.  Jaime Lopez Perez and Padron Valle along with a juvenile known to be Valle's cousin, exited the vehicle and proceeded to walk towards the Old San Juan.  Subsequently, at 6:00 p.m. Lopez Perez, Padron Valle and the juvenile returned to the parking lot and pretended that the vehicle had a mechanical breakdown.

At approximately 6:57 p.m. the juvenile broke the Toyota Corolla's driver side window and opened the trunk of the vehicle.  Padron Valle and the juvenile boarded the black Lincoln with Lopez Perez was waiting inside in the part of the area at approximately 6:58 p.m.

On November 18, 2004 the confidential witness was attempting to reach to Lopez Perez by telephone but instead reached Jorge Padron Valle who picked up the call.  Valle advised the confidential informant that there was no money found inside the Toyota and they heard that the police were in the parking lot.

Subsequently, the confidential witness calls Lopez Perez again but Padron Valle answers once again. The CI insisted that there was money in the vehicle at the time that the vehicle was parked in the parking lot.

On December 2, 2004, a meeting between the confidential witness Jaime Lopez Perez, Jorge Valle, Angel Reyes took place at the Antonio R. Barcello in Barrio Obrero in Puerto Rico. Padron Valle and Lopez Perez were wearing the uniforms and carrying the firearms. During the meeting, the escort of 20 kilograms of cocaine in the San Juan area was discussed. Lopez Perez and Padron Valle told the confidential witness that they would do it and that they would charge $4,000.00 per individual if the load stayed in the San Juan area. The confidential witness stated that his boss needed four or more police officers for this venture. Lopez Perez and Padron Valle replied that they could get more officers involved. The confidential witness stated that the first venture would be small if everything went as planned and that the next would be bigger. On December 15, 2004 at approximately 2:00 p.m., surveillance was conducted in the area of Plaza Antonio Barcelli where Padron Valle, Jaime Lopez Perez, Angel Reyes and Elliot Torres Rojas met with the confidential witness to continue planning the December 16th escort of the 20 kilograms of cocaine.

During the meeting, Padron Valle had a weapon and Jaime Lopez Perez was wearing his uniform. The confidential witness stated that the load of 20 kilograms of cocaine would arrive on December 16, 2004 in the afternoon hours. During the meeting, Lopez Perez and Padron Valle stated that the four of them will be

available to escort the load.  The confidential witness stated that the four of them had to be together from 12 noon on and that he needed to meet with them at approximately 12:30 p.m. to give them the final details of the venture.

On December 16, 2004 prior to the escort, another surveillance was conducted at the Plazoleta Isla Verde Food Court where a meeting took place between the confidential witness, Lopez Perez, Padron Valle, Reyes Velasquez, and Torres Rojas.  The confidential witness provided Lopez Perez and associates the instructions regarding the upcoming load of narcotics and that they had the escort from Luis Munoz International Airport in Carolina Puerto Rico to an unidentified location in the San Juan area.  The load was supposed to arrive at approximately 1:30 in the afternoon.

Subsequently, at approximately 3:30 on the same day, Lopez Perez and others and the San Juan City police officers escorted a load of 20 kilograms of cocaine from the airport to the Caribe Hilton Hotel in San Juan, Puerto Rico.

On the same day, at approximately 5:57 p.m., Lopez Perez, Padron Valle, Reyes Velázquez and Torres Rojas arrived at the Escambron parking lot to receive the payment for their escort services.  The confidential witness made a payment of $4,000.00 to each of the police officers that participated in the escort.  An unidentified male arrived at the Escambron area with Padrein Valle, Lopez Perez and Reyes Velasquez in a dark colored Toyota RAV4, while Torres Rojas arrived in a white Jetta.  The unidentified male was then identified as Ramon Nunez Castro who was Padron Valles' wife's brother-in-law.

On January 21, 2005 at approximately 1330 hours, surveillance was established at the Plaza Antonio Barcele to monitor an undercover meeting between the CI and Lopez Perez, Padron Valle, Melendez Pimentel, Cameron Colomba, Nunez Rosario, Reyes Velasquez, Diaz Martez, and Jehu Hernandez.   During the meeting, the confidential witness discussed Lopez Perez and the others present the upcoming venture of escorting 100 kilograms of cocaine in the San Juan area. During this meeting, the confidential witness told them that they would get paid $100,000.00.  Padron Valles spoke to the confidential witness alone and stated that he would pay $7,000.00 to each of the officers which participated in the next escort and that he (Padron Valles) would take the rest.

Moreover, Padron Valles told the confidential witness that he did not trust Lopez Perez anymore because maybe he (Lopez Perez) would be cooperating with the authorities. On February 15, 2005 at approximately 1450 hours surveillance was established at the Escambron parking lot in San Juan, Puerto Rico to monitor another undercover meeting between confidential witness and the charged defendants.

During this meeting, the confidential witness discussed with the group the upcoming venture of escorting 20 kilograms of cocaine and five kilograms of heroin. The load would arrive to a pier in the San Juan area and that they had to escort the load to an unidentified location in the San Juan area.  The CI told the group that they would get a payment of $4,000.00 each. On February 17, 2005, at approximately 1:45 p.m. the group escorted 20 kilograms of purported cocaine and

13

five kilograms of purported heroin from the pier ten of the Old San Juan Puerto Rico to the Condado Plaza Hotel in San Juan, Puerto Rico.  The escort was provided by two vehicles, a 2005 Dodge Durango rented by Jehu Hernandez on the same date from Leaseway of Puerto Rico and Mitsubishi Outlander.  At approximately 5:30 p.m. the group arrived at the Escambron parking lot and the group members were paid $4,000.00 for their escort services.

Subsequently all the defendants at the were arrested and charged as listed in the indictment.

## ARGUMENT

## I. THE CONVICTION OF MR. MELENDEZ-PIMENTEL IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### 1) The Performance of Counsel for Mr. Melendez-Pimentel, Fell Below an Objective Standard of Reasonableness During the Pre-Trial Phase

A. Strickland – Ineffectiveness Standard Review

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id*. 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance".
*Id*

The Court clarified that this reference to "highly deferential scrutiny"[5] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[6] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also*: *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

---

[5] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington,* 466 U.S. at 695.

[6] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington,* 466 U.S. at 691.

The Supreme Court noted that,

"a single, serious error may support a claim of ineffective assistance of counsel."

*Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[7]

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy". *Id.,* 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.* 477 U.S. at 385.

The Supreme Court added:

---

[7] See also *Murray v. Carrier,* 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same).

"Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. See Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[8] if counsel's specific acts or omissions are not demonstrably[9] the result of actual strategic choices made between or among all

---

[8] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U.S. at 365, 387, 390-91.

[9] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989)(record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer")(*citing Kimmelman v. Morrison*, 477 U.S. at 386); *Moffet v. Kolb*, 930 F.2d 1156, 1160-61(7th Cir. 1991)(counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley*, 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was " rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen,* 47 F.3d 739,

plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[10] Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

> "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id. Strickland v. Washington*, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. [11] *A subsequent affidavit from counsel will not*

---

743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[10] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra*, 878 F.2d at 711 (citing *Strickland*, 466 U.S. at 690-91); *Holsomback v. White*, 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996).

[11] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs*, 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

*suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [12]

In the instant case, Mr. Melendez-Pimentel has made specific, sworn, factual allegations which this Court should accept as true for considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

### b. Strickland Prejudice Standard Review

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's

---

[12] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

deficient conduct more likely than not altered the outcome of the case", [13] the Court specifically and explicitly rejected this argument by the government.

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[14]

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady*, 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady*, 456

---

[13]This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano*, 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

[14] *See also United States v. Day*, 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery*, 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell*, 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor*, 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell*, was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor*. The Supreme Court's holding in *Lockhart v. Fretwell*, was limited to circumstances where the "different outcome" would be contrary to the law. *Id*. As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell*,:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland*. The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id*. 506 U.S. at 373 (O'Connor) (concurring).

U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Id. Strickland*, 466 U.S. at 697-98, 80 L.Ed.2d at 700.[15]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

"Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[16] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland*, 466 U.S. at 694-95*; United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[17]

---

[15] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

[16]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[17] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell*, 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover*, 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[18]

The *Strickland* test for "prejudice" is applicable to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54

---

fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor*, 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell*, was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor*. The Supreme Court's holding in *Lockhart v. Fretwell*, was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson*, (10th Cir. 2000)(citing *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon*, 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

[18] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States,* 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States,* 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham,* 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995)(same) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono*, 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

F.3d 1508 (10th Cir. 1995),[19] with the caveat that "prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction arid/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d 835 (2nd Cir. 2000). Specifically, Mr. Melendez-Pimentel specific, sworn, factual allegations, in his § 2255 petition that he was prejudiced by the objectively unreasonable performance of counsel in the pre-trial of his case.

Based on the foregoing facts and law, Mr. Melendez-Pimentel has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and also constitutes "cause" allowing the Court to reach the merits of Mr. Melendez-Pimentel's claim of violation of his rights under the Sixth Amendment. *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure

---

[19] *See also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino*, 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson*, 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990)

of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and *United Stases v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

## PETITION TO PRESENT THAT THE PLEA WAS INVOLUNTARY SINCE THE SAME WAS PRESENTED WITHOUT A FULL KNOWLEDGE AND UNDERSTANDING OF ALL THE FACTS OF THE CASE

As previously presented, petitioner pled guilty as charged in the indictment under the position that the counsel had reviewed the discovery of the case and had been made aware of all the circumstances and facts that would be used to prosecute petitioner's case.

However, at the time that the petitioner provided his plea of guilt to the District Court, counsel should have been aware that there were several factors affecting the creditability of the government's main informant, which were brought in light during the trial of Hymen Lopez Perez and Ramon Nunez Rosario who were both acquitted of all the charges after a jury trial.

Had counsel properly prepared and reviewed the discovery of the case, counsel would have been informed that the government had concealed from petitioner the fact that the main and only government informant had incurred an additional criminal charge. Petitioner provides that had he known about the situation prior to entering a guilty plea, that petitioner would have exercised his constitutional right to proceed to trial. (See sworn affidavit of petitioner).

24

It is well established that petitioner's constitutional right to proceed to trial was violated not by his waiver of his right to present a jury trial defense, but by counsel's failure to properly research the case and familiarize himself with the tainted testimony that was presented by the main confidential informant in this case.

As the Supreme Court is addressed in *Wiggins v. Smith,* 123 S.Ct. 2357 (2003) supporting the position taken by the Court in Strickland that counsel has an obligation to make sure investigations are necessary and decisions not to investigate must be made under reasonable circumstances:

> "Strategic choices made after full investigations of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than completed investigations are reasonably precisely to the extent that reasonable professional judgment supports the limitations on investigation.   In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying deference to counsel's judgments."

*Id. Wiggins, quoting Strickland* at 690-691.

It is obvious, that at the time the petitioner presented his plea before this Court, that counsel should have reviewed the testimony of the additional co-defendants, especially the testimony of the confidential witness and would have established clearly that petitioner's best tactical decision in the case, was not to proceed to a guilty plea, but to proceed to jury trial based on the fact that the only and main government witnesses perjured testimony.

In fact, a reasonable review of the confidential informant's background, would have led counsel to the proposition that the confidential informant was in fact not only cooperating with the authorities but living his elicit life as well, which not only let to the acquittal of the co-defendants of this case, but led to the dismissal of multiple federal charges as well.  (See Appendix B, Newspaper Article of Louis Fraticelli, Chief of the FBI and Puerto Rico confirming arrest of Confidential Informant)

Accordingly, petitioner presents that his decision to provide a guilty plea was not made in a knowingly and intelligent fashion since all the facts required for petitioner to provide an intelligent plea before this Court were not available to petitioner at the time.

## II. AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Mr. Melendez-Pimentel has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Mr. Melendez-Pimentel has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief*); Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. Melendez-Pimentel respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he can prove his case.

### CONCLUSION

**WHEREFORE** MOVANT Mr. Melendez-Pimentel respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. Melendez-Pimentel's plea be **VACATED**.

Done this _____, day of December 2009

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this ____ day of December 2009 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

Respectfully submitted,

Luis Melendez-Pimentel
Reg. # 24477-069
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUIS MELENDEZ-PIMENTEL,
     Petitioner,


vs.                                    Docket No.: 05-232


UNITED STATES OF AMERICA
     Respondent.
_____/

### SWORN AFFIDAVIT
### LUIS MELENDEZ-PIMENTEL

COMES NOW, Petitioner, Luis Melendez-Pimentel pursuant to Penalty of Perjury under Title 28 U.S.C. § 1746, with this her Sworn Affidavit in Support of Motion to Vacate Sentence pursuant to Title 28 U.S.C. § 2255 and provides as follows:

1. I am the Petitioner in the above captioned cause.

2. I was represented by Attorney Luis Rivera during my criminal case.

3. At no time during my pre-trial preparation, did my attorney ever review with me the government's case in chief, nor review with me the discovery of the case.

4. The only option that was ever presented to me, was to plead as charged.

5. Had I known that the Government's C/I had credibility issues, I would have never proceeded to pleading guilty.


# A

6. My decision to plead guilty was based on an incomplete set of facts of the government's case against me.

7. I never had an opportunity to review the government's discovery in my case prior to making any decisions whether to plead or proceed.

8. My decision to plead guilty was based on an incomplete set of facts.

9. I relied on my attorney's advice before I made any of my decisions, only to now realize they were based on incomplete research of the available options.

Done this _____, day of December 2009

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this ____ day of December 2009 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

Respectfully submitted,

Luis Melendez-Pimentel
Reg. # 24477-069
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640

**20 Puerto Rico Hoy**

EL NUEVO DÍA
JUEVES, 20 DE MARZO DE 2008

# Arresto de valioso testigo pone en peligro encausamiento de policías

## También crea supuestos roces entre el NIE y el FBI

**POR MIGUEL DÍAZ ROMÁN**
End.mdiaz22@elnuevodia.com

**AGENTES** del Negociado Federal de Investigaciones (FBI, por sus siglas en inglés) arrestaron un confidente del Negociado de Investigaciones Especiales (NIE) que figuraba como testigo en más de nueve casos de tráfico de drogas y posesión ilegal de armas radicados por fiscales del Departamento de Justicia.

El confidente Orlando Merced Morales, quien también sería testigo en casos de corrupción policíaca, fue arrestado el 31 de enero en el Tribunal Superior de Bayamón, confirmó la fiscal de distrito Wanda Vázquez.

El arresto de Merced Morales creó gran molestia en agentes del NIE y alguaciles de ese tribunal, según revelaron alguaciles que estuvieron presentes y hablaron bajo anonimato.

Fuentes de **El Nuevo Día** aseguran que los cargos federales contra el confidente afectó las relaciones del FBI y el NIE, lo que a su vez ha generado una serie de reuniones entre las autoridades federales y el director del NIE, Luis Ríos, quien según la prensa renunciará efectivo el 15 de abril.

El secretario de Justicia, Roberto Sánchez Ramos, y Ríos, dijeron que no comentarán sobre este asunto.

La portavoz de la Fiscalía federal, Lymarie Llovet Ayala, indicó que "meses antes del arresto del confidente, el NIE y el FBI sabían que iba a ser arrestado por violar leyes federales". Llovet Ayala agregó que las relaciones entre el NIE y las autoridades federales "están muy bien y continuamos trabajando en conjunto".

Por su parte, el jefe del FBI, Luis Fraticelli, se negó a confirmar si había sostenido reuniones con Ríos y catalogó como "estrechas" las relaciones entre el FBI y el NIE.

> **"Ya un abogado de uno de los policías acusados me dijo que pedirá la desestimación de los cargos contra su cliente por los cargos federales"**
>
> **MANNY SUÁREZ**
> abogado

Pero el licenciado Manny Suárez, representante legal de Merced Morales, dijo que las acusaciones federales contra el confidente ponen en peligro los casos del NIE debido a que los cargos federales se pueden usar para minar su credibilidad en los tribunales.

El abogado Lemuel Velilla Reyes confirmó a **El Nuevo Día** que usará la fragilidad del testigo para defender a un cliente acusado de narcotráfico.

El director del NIE fue citado como testigo en la vista de fianza para Merced Morales, lo que pone de relieve las diferencias entre las agencias locales y federales. En la vista, Ríos sostuvo que Merced Morales no representa un peligro de fuga, según indicó Suárez. A



**LUIS FRATICELLI,** jefe del FBI, no confirmó si el arresto causó roces con el NIE.

Merced Morales se le acusó de robar $2,000 y mentirle al gobierno federal el 6 de diciembre del 2004, siendo confidente del FBI.

Pero no fue hasta el pasado 30 del mes de enero cuando los cargos se radicaron ante un gran jurado, que emitió la orden de arresto que ha sido mantenida en secreto por el FBI y por la Fiscalía federal.

Fraticelli no entró en detalles sobre las acusaciones contra Merced Morales y se limitó a decir que los cargos fueron radicados "cuando aún no habían prescrito y como resultado de las investigaciones realizadas por el FBI".

7009 1680 0002 2796 1297

RECEIVED &
2009 DEC 28  PM 2: 48
CLERK'S OFFICE
U.S.DISTRICT COU
SAN JUAN, P.R

Luis A. Melendez
#24477-069
Federal Correctional Inst.
P.O. Box - 2000, Fort Dix
N.J. 08640.



U.S. POSTAGE
PAID
TRENTON, NJ
08640
DEC 23, 09
AMOUNT
$0.00
00021282-04

1000

08640

Office of the Clerk
Room 150 Federico Degetau
Federal Building Carlos Chardo
Ave. Hato Rey, Puerto Rico
00918-1767...

